United States District Court
for the
Southern District of Florida

| Karen Shapiro, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 19-23163-Civ-Scola |
| | ) | |
| NuVasive, Inc., Defendant. | ) | |

## Order Granting Motion to Dismiss

The Plaintiff Karen Shapiro brought negligence and strict liability claims against the Defendant NuVasive, Inc. ("NuVasive") for injuries she sustained from a surgery due to allegedly defective Polyaxial Screws. Now before the Court is the NuVasive's motion to dismiss. (ECF No. 12.) For the reasons set forth below, the Court **grants** the motion to dismiss (**ECF No. 12**).

1. **Background**

On July 13, 2020, Karen Shapiro underwent spinal fusion surgery. (ECF No. 1- 3 at ¶ 6.) The surgeon used the NuVasive SpheRx DBR II Spinal System, a screw system that consists of various types of "polyaxial screws, dual ball rods, locking nuts, and transverse connectors." (*Id.* at ¶¶ 7, 14.) Shortly after her surgery, Shapiro's physician took an x-ray of her back, which showed that "all of her medical hardware was in an excellent position." (*Id.* at ¶ 8.) At a follow-up visit to the doctor's office on July 11, 2012, Shapiro no longer had any complaints of back pain. (*Id.* at ¶ 9.)

On April 14, 2017, nearly seven years after the surgery, Shapiro complained of back pain to her physician. (*Id.* at ¶ 10.) The doctor took another x-ray, which showed "that the defective pedicle screw at the SI level and the defective facet screw on the left contralateral side had broken off and fragments of the screw had become contained within the bone." *Id.* Shapiro needed to undergo a second spinal surgery to remove the failed screws and perform a fusion augmentation. (*Id.* at ¶ 11.)

Shapiro brought this suit for strict liability and negligence against NuVasive, who "was engaged in the business of designing, manufacturing, inspecting, testing, advertising, marketing, selling, and distributing…the NuVasive SpheRx DBR II Spinal System." (*Id.* at ¶ 13.) Now, NuVasive seeks to dismiss Shapiro's complaint for failure to state a claim (ECF No. 12.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Strict Liability Claims

Under Florida strict liability law, "the manufacturer of a defective product can be held liable if the manufacturer made the product in question, if the product has a defect that renders it unreasonably dangerous, and if the unreasonably dangerous condition is the proximate cause of the plaintiff's injury." *Jennings v. BIC Corp.*, 181 F. 3d 1250, 1255 (11th Cir. 1999) (citing *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976)). The manufacturer can be held strictly liable for a defective product under three theories: a design defect, a manufacturing defect, or an inadequate warning. *Id.* Here, Shapiro brings strict liability claims against the manufacturer under the design defect and the manufacturing defect theories of liability. (ECF No. 1-3.) NuVasive argues that Shapiro's strict liability claim must be dismissed because Shapiro did not sufficiently identify a defect. The Court agrees.

"The complaint must contain factual allegations about what was in fact defective about the product." *Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395, *2 (S.D. Fla. 2013) (King, J.) (strict liability claim dismissed because there were no allegations about how the product was defective); *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (Ungaro, J.) (dismissing the suit because there were no factual allegations suggesting what was defective about the products); *Rice v. Walker*, 359 So. 2d 891, 892 (Fla. 3d DCA 1978) (dismissing the products liability complaint where the plaintiff did not allege facts showing how the product was defective); *cf. Bailey v. Janssen Pharmaceutical, Inc.*, 288 Fed. App'x 597, 607-608 (11th Cir. 2008) (upholding the complaint because it suggests several possible defects existing at the time plaintiff used the product).

Shapiro does not identify a defect in NuVasive' product. Instead, she alleges that seven years after surgery, an x-ray exam "revealed that the defective pedical screw at the SI level and the defective facet screw on the left contralateral side had broken off and fragments of the screw had come contained within the bone." (ECF No. 1-3 at ¶ 22.) Shapiro argues, without citing a strict liability case, that this allegation is sufficient, and that requiring her to specify how the product is defective is "unattainable" and that it is "contrary to law" to require a plaintiff to definitively prove her claims at this stage. (ECF No. 16 at 2-3.) However, the law only requires Shapiro to identify a defect that she contends caused her injury. *See, e.g., Gomez*, 675 F. Supp. 2d at 1163. It does not require Shapiro to prove that the screws used in her surgery were in fact defective.

### 4. Negligence Claims

Shapiro brings a negligence claim under several theories of liability including a design defect, a manufacturing defect, failure to test, failure to warn, and failure to inspect. (ECF No. 1-3 at ¶ 22.) First, Shapiro's allegation of inadequate testing and inspecting are problematic because they are not independent bases for a negligence claim. "Under Florida law, a manufacturer's duty to test is a subpart of its duty to design a product with reasonable care and, therefore, is subsumed in the plaintiff's claims for defective design and failure to warn." *Tsavaris v. Phizer, Inc.*, 2016 WL 375008, at *4 (S.D. Fla. Feb. 1, 2016) (citing *Adams v. G.D. Searle & Co., Inc.*, 576 So. 2d 728 (Fla. 2d DCA 1991)). Therefore, the Court cannot analyze whether Shapiro's inadequate testing and inspecting allegations support her negligence count, "only as corroborating her design defect and failure to warn counts." *Id.*

Second, Shapiro sues for negligence under a theory of failure to warn. However, in the prescription drugs or products context, the manufacturer "discharges its duty to warn by providing the physician with information about risks associated with those products." *Rounds v. Genzyme Corp.*, 440 Fed. App'x 753, 754 (11th Cir. 2011). "The manufacturer's duty to warn of a prescription product's hazards runs to the physician, not directly to the patient." *Id.* Therefore, Shapiro's failure to warn claim cannot stand against NuVasive, the manufacturer.

Third, Shapiro brings defective design and manufacturing claims through a theory of negligence. (ECF No. 1-3 at ¶¶ 21-23.) "The basic elements of a negligence cause of action apply equally to products liability manufacturing defect claims grounded in negligence." *Kuchenbecker v. Johnson & Johnson*, 2019 WL 4416079, at *1 (S.D. Fla. Sept. 16, 2019) (Moreno, J.). "A plaintiff must allege: (1) a duty of care was owed to the plaintiff; (2) defendant breached that duty of care; and (3) the breach of that duty of care was a proximate cause of the

plaintiff's injuries." *Id.* "In addition to these elements, a plaintiff must also establish that the product at issue was defective or unreasonably dangerous." *Id*; *see also, Hosler v. Alcon Laboratories, Inc.*, 2012 WL 4792983, at *5 (S.D. Fla. Oct. 9, 2012) (Rosenbaum, J.) ("the product was defective or unreasonably dangerous" is an element of stating a products liability claim based on negligence, including negligent design or manufacture); *Kaufman v. Pfizer Pharmaceuticals, Inc.*, 2010 WL 9438673, at *4 (S.D. Fla. Nov. 23, 2010) (Ungaro, J.) (the plaintiff failed to state a plausible negligence claim because she did not allege sufficient detail, including "the particular defect each drug has.").

As explained *supra,* Shapiro did not sufficiently identify a defect in the product or demonstrate how the device "deviated from manufacturing specifications." *Kuchenbecker,* 2019 WL 4416079 at *2. "Without pinpointing a specific manufacturing [or design] defect," this complaint fails to state a claim for negligence. Thus, her negligence claims for defective design and manufacturing fail for the same reason as her strict liability claim.

**5. Conclusion**

In sum, the Court **grants** NuVasive's motion to dismiss without prejudice (**ECF No. 12**). The Court orders the Clerk to **close** the case and denies and pending motions as moot.

**Done and ordered** in chambers, at Miami, Florida, on November 5, 2019.

_____
Robert N. Scola, Jr.
United States District Judge